Filed 8/22/16  Chase Bank v. Arbogast CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHASE BANK USA, N.A., | |
| Cross-complainant and Respondent, | E063261 |
| v. | (Super.Ct.No. MCC1300894) |
| TOMI ARBOGAST, | OPINION |
| Cross-defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Raquel A. Marquez, Judge.  Affirmed.

Lieberg, Oberhansley & Strohmeyer and Jon H. Lieberg for Cross-defendant and Appellant.

1

Bryan Cave, Glenn J. Plattner and Richard P. Steelman, for Cross-complainant and Respondent.

Chase Bank USA, N.A. (the Bank) initiated foreclosure proceedings on Tomi Arbogast's house in Temecula. Arbogast sued the Bank (1) to quiet title; (2) to obtain an injunction; and (3) to obtain declaratory relief. The Bank cross-complained, asserting four causes of action for (1) breach of contract; (2) an equitable mortgage; (3) unjust enrichment; and (4) declaratory relief. The trial court denied Arbogast's anti-SLAPP motion. (Code Civ. Proc., § 425.16.) Arbogast contends the trial court erred by denying her anti-SLAPP motion and her requests for judicial notice. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.     COMPLAINT

The following facts are taken from Arbogast's complaint. In 2003 Arbogast borrowed $100,000 from the Bank. The loan was secured by a deed of trust on Arbogast's property in Temecula (the property). In August 2007 LandAmerica Default Services—California initiated foreclosure proceedings against the property. The notice reflected Arbogast had past due payments on the loan totaling $5,385.24. In 2009 First American Title Insurance Company (First American) caused a Notice of Default and Election to Sell Under Deed of Trust to be recorded against the property.

In May 2010 the trustee's sale was conducted. Canter International Riverside II, LLC (Canter) was the high bidder at the sale, at a bid of $160,000. The Trustee's Deed Upon Sale was recorded on July 20, 2010. On November 17, 2010, a Notice of

Rescission of Trustee's Sale and Trustee's Deed Upon Sale was recorded in relation to the property. The recordation was requested by First American which explained, "After the [trustee's] sale was held, the Trustors entered into litigation, thereby divesting the power of sale pursuant to which [the] Trustee was purportedly acting when the Trustee's Sale was purportedly held and the Trustee's Deed Upon Sale was issued. Accordingly, the Trustee's Sale and the resulting Trustee's Deed Upon Sale were and are null and void and legally ineffective to transfer all or any interest in the Property to Canter International Riverside II, LLC."

The document further provides, "NOW THEREFORE, by the recordation of this Notice of Rescission of Trustee's Sale and Trustee's Deed Upon Sale, the undersigned, as duly substituted trustee under the aforesaid deed of trust, does hereby rescind that certain Trustee's Deed Upon Sale recorded July 20, 2010 . . . in the Office of the Riverside County Recorder and the Trustee's Sale described therein as though said instrument had never been executed, delivered and/or recorded and the purported Trustee's Sale described therein had never been held. The undersigned does further restore the condition of record title to the above-described real property and the existence and priority of all lien holders to the status quo prior to the recordation of said Trustee's Deed Upon Sale."

On June 14, 2011, a quitclaim deed was recorded reflecting Arbogast purchased the property from Canter. The Bank contacted Arbogast about delinquent payments. In February 2013 the Bank informed Arbogast that it intended to foreclose on the property.

On June 24, 2013, Arbogast filed her complaint. In Arbogast's complaint, she asserts she had not entered into any litigation that would have divested the Trustee of the power to sell the property to Canter. For example, she had not declared bankruptcy. Arbogast alleged the Notice of Rescission "is of no legal effect" because it did not satisfy the legal requirements for rescinding a deed in that there was no pending litigation. (Civ. Code, § 1058.5.)

In Arbogast's First Cause of Action to Quiet Title, she asserted she purchased the property from Canter. Arbogast contended the Bank no longer had a deed of trust securing the property because the Bank foreclosed. Arbogast requested the trial court find she owned the property "free and clear."

In the Second Cause of Action, for injunctive relief, Arbogast requested the court restrain the Bank from foreclosing on the property because the Bank had "no valid deed of trust." In the Third Cause of Action, for declaratory relief, Arbogast asserted the Bank did not have a valid deed of trust because the property had already been foreclosed, sold to Canter, and First American did not have the authority to rescind the sale to Canter. Arbogast requested the trial court declare the loan was fully satisfied and the deed of trust extinguished when the property was sold to Canter.

B. <u>CROSS-COMPLAINT</u>

The following facts are taken from the Bank's cross-complaint. In 2003, Arbogast borrowed $100,000 from the Bank, secured by a deed of trust on the property. Between 2007 and 2009, Arbogast did not make payments on the loan. On May 24, 2010, the property was sold to Canter at a public auction. On June 1, 2010, Arbogast

4

filed a lawsuit challenging the validity of the trustee's sale. Arbogast's lawsuit included causes of action (1) for breach of contract; (2) to set aside the foreclosure; (3) to cancel the trustee's deed; (4) for injunctive relief; (5) for fraud; (6) for unfair competition (Bus. & Prof. Code, § 17200); (7) for unjust enrichment; and (8) for negligence.

Canter was named as a defendant in Arbogast's lawsuit. The Bank caused a Notice of Rescission of the Trustee's Deed Upon Sale to be recorded in November 2010. Canter agreed to the rescission. In July 2011 Canter unilaterally recorded a quitclaim deed, conveying the property to Arbogast, in order to settle the lawsuit. Arbogast dismissed Canter from the lawsuit.

The Bank filed a motion for summary judgment in the 2010 case. Arbogast opposed the motion. On March 2, 2012, the Bank and Arbogast reached a settlement agreement before the trial court ruled on the motion for summary judgment. In the settlement agreement, Arbogast and the Bank released and discharged each other from any and all claims arising out of the facts alleged in Arbogast's 2010 lawsuit as well as the facts set forth in the settlement agreement. The Bank paid Arbogast $90,000 as part of the settlement. Arbogast did not make loan payments after the Bank paid the $90,000 settlement amount. The Bank again initiated foreclosure proceedings. On June 24, 2013, Arbogast filed the instant lawsuit.

The Bank filed its cross-complaint, in the instant case, on November 4, 2014. In its First Cause of Action, for breach of contract, the Bank alleged Arbogast breached the settlement agreement by filing the instant lawsuit. The Bank asserted Arbogast had alleged the Notice of Rescission was invalid in her June 2010 lawsuit, so she was

5

breaching the settlement agreement by again alleging in this 2013 lawsuit that the Notice of Rescission was invalid.

In the Bank's Second Cause of Action, it requested the trial court declare an equitable mortgage was created when the Notice of Rescission was recorded because the parties "always intended the Rescission to restore the Deed of Trust on the Property." In the Bank's Third Cause of Action, it alleged Arbogast was unjustly enriched by obtaining a loan in the amount of $100,000 and having failed to make a payment on the loan since 2007. In the Bank's Fourth Cause of Action, it requested declaratory relief reflecting (1) Arbogast owed the Bank $100,000, plus costs, interests, and fees; (2) the note/loan was enforceable; and (3) the loan was secured by a deed of trust or equitable mortgage on the property.

### C. ANTI-SLAPP MOTION

Arbogast filed an anti-SLAPP motion to strike the Bank's breach of contract cause of action. In the motion, Arbogast alleged her June 2010 lawsuit did not seek "any remedy based on the Trustee's subsequent Notice of Rescission or the post-foreclosure attempted collection of the discharged mortgage. The Notice of Rescission was not at issue and not adjudicated."

Arbogast asserted she met the first prong of an anti-SLAPP motion because the Bank's breach of contract cause of action arose from her protected activity of suing the Bank. Arbogast argued she satisfied the second prong of an anti-SLAPP motion because the Bank did not have a probability of prevailing. Arbogast argued her "Complaint only disputes the current validity of the note and deed of trust; thus, under

6

no circumstances can the filing of this lawsuit constitute a breach of the settlement agreement. [¶] The prior complaint was based on events occurring prior to the filing and sought to set aside the Trustee's sale and sought damages resulting from the sale. That case was settled. The current lawsuit is based on actions of [the Bank] taken after dismissal of the prior lawsuit—it is attempting to collect on (and secure) an extinguished debt."

### D.     2010 LAWSUIT

Arbogast's 2010 complaint was included in a request for judicial notice in support of her anti-SLAPP motion. In Arbogast's 2010 complaint, she brought eight causes of action (1) for breach of contract; (2) to set aside the foreclosure sale because there was not a default; (3) to cancel the trustee's deed; (4) for injunctive relief; (5) for fraud; (6) for unlawful and fraudulent business practices (Bus. & Prof. Code, § 17200); (7) for unjust enrichment; and (8) for negligence. The complaint named the Bank, Canter, First American, NDEX West LLC, and Does 1 through 20 as defendants.

The following facts are taken from Arbogast's 2010 complaint. In 1997, Arbogast purchased the property. In 2003, Arbogast borrowed $100,000 from the Bank, with an adjustable interest rate. The loan was secured by a deed of trust on the property. In 2009 Arbogast lost her job and the minimum amount of the loan payment increased. In June 2009 Arbogast stopped making her loan payments. In September 2009 First American recorded a Notice of Default and Election to Sell Under Deed of Trust. The amount of arrears was $6,039.27.

In October 2009 Arbogast received a letter from the Bank reflecting the account had been referred to the Bank's "Homeowner's Assistance Department." The letter requested Arbogast call the Bank "to discuss workout options to resolve the delinquency." A Bank employee told Arbogast the Bank would send Arbogast forbearance paperwork, which she would need to complete and return to the Bank. The employee instructed Arbogast to make three trial payments, due December 1, 2009; January 1, 2010; and February 1, 2010, while the Bank processed the loan modification.

At the end of November or beginning of December, Arbogast had not yet received the paperwork, and again contacted the Bank. A second Bank employee informed Arbogast that the first Bank employee had incorrectly input Arbogast's information, so the loan modification request was denied. This second employee again input Arbogast's information, said the three trial payments would be January 1, February 1, and March 1. The second employee told Arbogast to complete the modification paperwork as soon as she received it and return it to the Bank.

At the end of December or early January, Arbogast still had not received the paperwork. Arbogast again contacted the Bank and spoke with a third employee. The third employee said the second employee had also incorrectly input Arbogast's information so the modification request had again been denied. The third employee correctly input the information, and Arbogast received the paperwork. Arbogast told the third employee that a Notice of Trustee's Sale had already been posted, and the third employee told her "Don't worry about it; we'll take care of it."

On January 11, 2010, Arbogast received and executed the loan modification paperwork. Arbogast also made the first payment on the loan modification. On January 15, Arbogast spoke to a Bank employee who informed her the "the foreclosure was postponed as a result of the Forbearance Agreement." Arbogast continued making her monthly loan payments through May.

On May 24, First American conducted a Trustee's Sale and sold the property to Canter. Arbogast alleged First American had not yet delivered the deed to Canter or recorded the deed.

On May 28, Arbogast spoke to an employee at the Bank, who informed Arbogast "the matter had been turned over to [the] vice president Steven and that [the Bank] would attempt to 'rescind' the Trustee Sale." Arbogast, in her 2010 complaint, alleged the Trustee's Sale was "void" because (1) it was breach of the loan modification agreement; (2) Arbogast had met the terms of the loan modification so there was not a default "and the Note had been reinstated"; and (3) various other procedural reasons.

In Arbogast's First Cause of Action for breach of contract, she alleged the Bank breached the loan modification agreement by causing the trustee's sale to take place. In the Second Cause of Action, to set aside the foreclosure sale, Arbogast again set forth her reasons as to why the trustee's sale was void, including (1) it was breach of the loan modification agreement; and (2) Arbogast was not in default "and the Note had been reinstated." As part of that cause of action, Arbogast wrote, "Plaintiff offers to tender and hereby tenders to defendants [the Bank] all amounts due and owing so that the

9

claimed default may be cured and plaintiff may be reinstated to her former rights and privileges under the Note and Deed of Trust as equitable owner of the Property."

In Arbogast's Third Cause of Action against the Bank and Canter, for cancellation of the trustee's deed, she alleged, "The claims of defendant Canter to the Property are without any right or merit. The Trustee's Sale is void and of no force or effect for the reasons set forth in Paragraph 29 of the complaint," i.e., Arbogast was not in default "and the Note had been reinstated." In the Fourth Cause of Action, Arbogast sought an injunction restraining First American from delivering and recording a trustee's deed in favor of Canter.

E.    SETTLEMENT AGREEMENT

In February and March 2012 the Bank and Arbogast signed a Settlement Agreement ending Arbogast's 2010 lawsuit. The "Recital of Fact" portion of the Settlement Agreement reflects, in relevant part, (1) Arbogast obtained a loan from the Bank in the amount of $100,000, and (2) A Notice of Rescission of Trustee Sale and Trustee's Deed Upon Sale in connection with the Deed of Trust was recorded on November 17, 2010.

The Release portion of the Settlement Agreement provides, in relevant part, "[T]he Parties . . . fully and forever release and discharge each other . . . from any and all claims . . . arising out of or related to the facts alleged in the Lawsuit or set forth in Section 2 [(the Facts)] of this Agreement."

10

F.    OPPOSITION TO THE ANTI-SLAPP MOTION

The Bank opposed Arbogast's anti-SLAPP motion. First, the Bank asserted its breach of contract cause of action did not arise out of Arbogast's protected petitioning activity. The Bank argued, "[The Bank] is not suing Arbogast because she filed a complaint against [the Bank]; [the Bank] is suing her because she breached a contract where she agreed to give up her right of petition in exchange for valuable consideration."

Second, the Bank asserted there was a probability it would prevail on the merits of its breach of contract cause of action. The Bank argued Arbogast's 2010 lawsuit "revolved around the validity of the trustee's sale and each parties['] responsibilities under the Note and Deed of Trust. . . . Specifically, Arbogast [had] asserted that the Trustee's Sale was void because a breach of the Note as modified by the forbearance agreement for which the Deed of Trust is security has not occurred. [Citation.] She also offered 'to tender and hereby tenders to defendant [the Bank] all amounts due and owing so that the claimed default may be cured and [Arbogast] may be reinstated to her former rights and privileges under the Note and Deed of Trust and as equitable owner of the Property.'" The Bank gave Arbogast $90,000 in exchange for (1) her promise to make payments on the loan, and (2) her release of claims. The Bank argued Arbogast had breached her promise by "again suing [the Bank] under the terms of the Note and Deed of Trust."

11

G.    HEARING

On February 5, 2015, the trial court held a hearing on Arbogast's anti-SLAPP motion. The trial court asked what happened to the $160,000 Canter paid for the property. The court explained, "[T]here's a really big piece missing," due to the lack of information regarding Canter's $160,000. Arbogast said she obtained the property when she settled with Canter. The Bank's attorney did not know what happened with the $160,000 Canter paid for the property.

The court asked if Arbogast had waived her protected right to petition by agreeing to terms of the Settlement Agreement. Arbogast asserted she had not waived her right to petition because the Settlement Agreement expressly excluded the note and deed of trust. Arbogast asserted the Bank paid her $90,000 to release the wrongful foreclosure claims. Arbogast argued the Settlement Agreement was silent as to whether she still owed money to the Bank under the note. Arbogast asserted "as a matter of law" the deed of trust did not exist after the deed was recorded reflecting Canter's purchase. Arbogast faulted the Bank for not providing evidence reflecting the rescission was valid, e.g., a bankruptcy filing.

The court asked how the validity of the rescission would be affected if Canter and the Bank had both agreed to the rescission as part of a settlement agreement. Arbogast responded to the court's question by asking, "What if the sun doesn't come up tomorrow?" The court asked the Bank if part of its breach of contract claim was based upon Arbogast's failure to make payments on the loan. The Bank explained that the

12

breach of contract was based in part upon Arbogast failing to make her required loan payments. The court took the matter under submission.

H.     RULING

In the trial court's ruling, it noted that when determining whether a cause of action arises from a defendant's protected activities, there is a difference between a cause of action based upon the defendant's protected activities and a cause of action that requires evidence of protected activities to prove liability. The trial court explained, "[The Bank] did not cross[-]complain against Arbogast because she filed a complaint, but because [the Bank] believes Arbogast has breached a contract that prevents her from filing a complaint." The court further explained it was the Bank's position that Arbogast had "in effect 'waived' the right to the anti-SLAPP statute's protection in the event she later breaches that contract." The court also pointed out that the Bank's breach of contract claim was based on a second alleged breach—Arbogast's failure to make payments on the loan. The court then concluded the Bank's breach of contract claim did not arise from Arbogast's protected petitioning activity.

**DISCUSSION**

A.     BACKGROUND LAW

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the

13

defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

"Trial courts evaluate motions brought under the [anti-SLAPP] statute using a two-step process. '"First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.]"' [Citation.] If that requirement is met, the court then proceeds to the second step to determine whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.] 'Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 209.)

B.     PROTECTED ACTIVITY

Petitioning activity includes oral or written statements made in a judicial proceeding. (§ 425.16, subd. (e).) Therefore, pleadings in civil litigation are covered by the anti-SLAPP statute, and do not require a showing that the litigated matter is one of public interest. (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 789.) For the sake of

judicial efficiency, we will assume, without deciding, that Arbogast's lawsuit meets the requirement of protected petitioning activity.

### C. PROBABILITY OF PREVAILING

In order to show a probability of prevailing, the Bank must demonstrate that its breach of contract cause of action has a "'minimum level of legal sufficiency and triability,'" i.e., "'minimal merit.'" (*Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 457.) This second step of the anti-SLAPP procedure "'operates like a "motion for summary judgment in 'reverse,'" in that the plaintiff is demonstrating its case has minimal merit. (*Ibid.*) The elements of a breach of contract cause of action are (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages. (*First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745.)

As to whether there was a contract, the elements of a contract are (1) parties capable of contracting; (2) consent; (3) a lawful purpose; and (4) sufficient consideration. Arbogast is an adult. The Bank is a nationally chartered bank. Thus, there are two parties capable of contracting. The Settlement Agreement was signed by both Arbogast and the Bank, indicating their consent. In the Settlement Agreement, Arbogast agreed to dismiss her 2010 lawsuit and release the Bank from any further claims arising out of the facts set forth in the lawsuit or the Settlement Agreement, which is a lawful purpose for the agreement. The Bank agreed to pay Arbogast $90,000, which would be sufficient consideration. Accordingly, there is proof of a contract.

15

Bank alleged it paid Arbogast $90,000. Additionally, Arbogast dismissed her 2010 lawsuit with prejudice. Thus, it can be inferred that the Bank paid Arbogast the $90,000, otherwise she would not have dismissed her lawsuit with prejudice. Therefore there is proof of performance by the Bank.

Next, we address breach by Arbogast. In the Settlement Agreement, in the "Fact" section, it reflects a trustee's sale was conducted on December 24, 2009; a Trustee's Deed Upon Sale was recorded on July 20, 2009; and a Notice of Rescission of Trustee's Sale and Trustee's Deed Upon Sale was recorded on November 17, 2010. In the "Release" portion of the Settlement Agreement, Arbogast released and discharged the Bank from any claims "arising out of or related to the facts alleged in the Lawsuit or set forth in Section 2 [(the Facts)] of this Agreement." In other words, Arbogast agreed to the Rescission and released the Bank from any claims arising out of the Rescission because the Rescission is included in the facts of the Settlement Agreement.

As explained *ante*, the Rescission made it as though the trustee's sale had never been held, and restored the property's title record to Arbogast's name and the existence and priority of all lien holders to the status quo prior to the recordation of the Trustee's Deed Upon Sale. Thus, Arbogast agreed to the restoration of the mortgage, and released her claims in connection with the Rescission.

In Arbogast's current lawsuit, in the First Cause of Action to Quiet Title, she contends the Bank no longer has a deed of trust securing the property because the Bank foreclosed. Arbogast requested the trial court find she owned the property "free and clear." Arbogast alleges, "The purported rescission of the Trustee's Sale (at Exhibit J)

16

by First American is ineffective and did not meet the requirements of California Civil Code section 1058.5(b)." Arbogast is directly challenging the Rescission, which could reasonably be viewed as a breach of the release in the Settlement Agreement because in the Settlement Agreement Arbogast released the Bank from any claims arising out of the Rescission. Thus, there is proof by which a trier of fact could find a breach by Arbogast.

In its cross-complaint, the Bank asserts it suffered damages by Arbogast's breach of contract "in an amount to be proved at trial." In its Prayer, the Bank seeks compensatory damages. Assuming Arbogast breached the Settlement Agreement, it would be reasonable to infer the Bank incurred damages by being forced to engage in unnecessary litigation.

In sum, there is merit to the Bank's breach of contract cause of action. Accordingly, the trial court did not err by denying Arbogast's anti-SLAPP motion.

D.     JUDICIAL NOTICE

1.     *PROCEDURAL HISTORY*

Arbogast filed a request for judicial notice in support of her anti-SLAPP motion. The request included (1) Arbogast's 2010 complaint; (2) the Banks's 2010 answer to the 2010 complaint; (3) the 2010 Trustee's Deed Upon Sale conveying the property to Canter; (4) the 2010 Notice of Rescission; (5) the 2011 Quitclaim Deed conveying the property from Canter to Arbogast; (6) Arbogast's 2012 Request for Dismissal of her 2010 lawsuit with prejudice, and the order of dismissal with prejudice; (7) Arbogast's

17

2013 complaint in the instant case; and (8) the Bank's 2013 cross-complaint in the instant case.

The trial court denied Arbogast's request for judicial notice "because the documents are not relevant to determination of this motion."

### 2.    *ANALYSIS*

Arbogast contends the trial court erred by denying her request for judicial notice as it relates to the court-filed documents.

A trial court must take judicial notice of court-filed documents if (1) it is requested by a party; (2) the adverse party is given sufficient notice of the request; and (3) the court is furnished with sufficient information to enable it to take judicial notice of the matter.  (Evid. Code, §§ 452, subd. (d), 453.)

Arbogast's request for judicial notice was filed on January 5, 2015, and mailed to the Bank's attorney on January 6, 2015.  The court-filed documents were attached to the Request for Judicial Notice.  The hearing on the anti-SLAPP motion took place on February 5, 2015.  Accordingly, the request was made by a party, the Bank was given sufficient notice, and the court had sufficient information.  Therefore, we agree the trial court erred by denying the request for judicial notice because the statutory requirements were met.  The request for judicial notice was made in support of the anti-SLAPP motion.  Because we have concluded, *ante*, the trial court did not err in denying the anti-SLAPP motion, we will not direct the court make any changes in relation to the request for judicial notice because there would be no point.  We have discussed the request for

18

judicial notice for the sake of explaining our use of the documents for which judicial notice was requested.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

RAMIREZ

P. J.

HOLLENHORST

J.