Filed 2/25/15  Weksler v. Weksler CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DORITA WEKSLER, Individually and as Cotrustee, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> GARY WEKSLER et al., <br><br> Defendants and Appellants. | B252276 <br><br> (Los Angeles County <br> Super. Ct. No. BC508276) |

APPEAL from an order of the Superior Court of Los Angeles Country, Reva G. Goetz, Judge.  Affirmed in part, reversed in part, and remanded.

Law Offices of Stewart Levin, Stewart Levin and Roee Kaufman, for Defendants and Appellants.

Oldman Cooley Sallus Birnberg & Coleman and Justin B. Gold, for Plaintiffs and Respondents.

———————————————

Defendants Gary Weksler and G. Scott Sobel appeal from an order denying their special motion to strike plaintiffs'[1] complaint pursuant to California Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] We affirm in part, reverse in part, and remand.

## FACTUAL AND PROCEDURAL SUMMARY

Gary Weksler is the only child of Harold Weksler. Harold married Dorita when Gary was 14 years old.[3] Gary moved out of the home shortly after and began receiving an allowance of $3,000 per month from Harold. Harold and Dorita also had a will and revocable trust which had provided an inheritance for Gary in the amount of $500,000 and payments of $51,000 annually upon Harold's death. In 2004, the trust was amended to omit Gary as a beneficiary. Gary was not made aware of this amendment at that time.

Harold suffered a stroke in 2010, which led to an onset of dementia and memory loss. As he was no longer able to handle the family's finances, Dorita Weksler and Fred Kumetz, Dorita's son from a prior marriage, took over that task. Gary's monthly allowance was gradually reduced to $1,000 per month. According to Gary, when he filed his first lawsuit the payments stopped altogether.

In early 2010, Gary discovered the existence of the 2004 trust amendment and was told by Harold's bookkeeper that Kumetz and Dorita were selling Harold's bonds at a rate of $30,000 to $40,000 a month. In mid-2010, he retained defendant Sobel, a litigation attorney, to sue Dorita and Kumetz to "get back [his] inheritance." Neither Gary nor Sobel believed any prelitigation settlement would be possible.

---

[1]    Plaintiffs are Dorita Weksler, individually, and Dorita Weksler and Fred Kumetz, as cotrustees of the Weksler Revocable Trust, the successor in interest for Harold Weksler.

[2]    SLAPP is an acronym for Strategic Lawsuit Against Public Participation. Subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[3]    Because Harold, Dorita, and Gary share the same last name, we refer to them by their first names.

Shortly afterward, according to Sobel, he and Gary met with Harold to "evaluate Harold's commitment to Gary's financial well being, to learn how the plaintiffs might be thwarting Harold's intent to benefit Gary, and obtain documentary evidence to support the[ir] litigation." During the meeting, Gary informed Harold that the 2004 amendment had eliminated Gary as a beneficiary, and that Kumetz and Dorita were selling his bonds on a monthly basis. Harold expressed disbelief and granted Gary and Sobel access to his estate documents for verification. Gary "begged" Harold to hire a different estate attorney and "fix the will and trust" to provide for Gary once more. He warned Harold that if he did not do so, he and Sobel would file a lawsuit against Kumetz and Dorita. Sobel also explained to Harold that he "believed . . . Fred [Kumetz] and Dorita were controlling [Harold's] money, to both his and Gary's detriment," and that it would be necessary to file suit against Kumetz and Dorita "to protect Gary's financial rights."

In August 2010, Gary and Sobel went to Harold's home to speak with him and his bookkeeper. One of the caretakers telephoned Kumetz, who asked to speak with Sobel. Kumetz told Sobel over the phone that he was the attorney for Harold and Dorita and forbade them from meeting with either of them without his authorization. When Kumetz threatened to call the police, Gary told Kumetz he was going to sue him. Gary and Sobel left without speaking to Harold or the bookkeeper.

Gary and Sobel made several additional attempts to reach Harold by telephone and showed up unannounced on a few occasions at Harold's residence. A few months later, Gary discovered Harold was receiving dialysis. He started visiting Harold during his dialysis sessions twice a week. When Harold was hospitalized in December 2010, Gary visited Harold "a couple times" and was accompanied by Sobel on one occasion. The complaint alleges that most if not all of defendants' conversations with Harold were in reference to the 2004 amendment that had eliminated Gary as a beneficiary.

At a December 2010 meeting between defendants, Dorita, and Harold, they discussed the Wekslers' financial circumstances, "how best to meet all of the Wekslers' financial needs," and "Gary's monthly support from his father and his inheritance status." Sobel unsuccessfully attempted to negotiate a higher monthly allowance for Gary.

3

During the conversation, Dorita assured defendants that "Gary's inheritance was intact." This was "contrary to [Sobel's] information," and Sobel was convinced that Dorita intended to deceive him and Gary: Sobel believed the conversation would not lead to "fruitful negotiations or compromise." After about an hour, Kumetz arrived and threatened to call the police. While he and Sobel were leaving, Gary threatened to file a lawsuit to get back his inheritance.

In September 2011, Gary, with Sobel's assistance, filed a propria persona petition for appointment of probate conservator of Harold Weksler, which alleged that Harold was "substantially unable to manage his . . . financial resources or to resist fraud or undue influence." Harold died in February 2012 and the petition was dismissed. In September 2012, Gary, through his attorneys, filed a petition to set aside the trust amendment. In it he alleged Kumetz and Dorita "took advantage of their fiduciary and confidential relationship with Harold" and procured the amendment "by undue influence," "depriv[ing] [Gary] of money and property that his father, Harold Weksler, clearly wanted [him] to receive." During discovery, Gary and Sobel discovered the existence of an irrevocable trust created by Harold and Dorita for Gary's benefit, executed on the same date as the 2004 amendment that eliminated Gary as a beneficiary. It was funded with $500,000 of municipal bonds which, according to defendants, were being sold by Kumetz and Dorita. In response, Gary, through his attorneys, filed a petition for constructive trust, accounting, and financial elder abuse in February 2013.

In May 2013, plaintiffs filed their complaint against Gary and Sobel alleging financial elder abuse and intentional infliction of emotional distress. The complaint alleged: (1) On or about July 9, 2010, defendants appeared unannounced at Harold's home to make sure Gary was provided for in Harold's estate plan; (2) Defendants "coerced or persuaded Harold Weksler to engage Mr. Sobel to create an estate plan on his behalf"; (3) On or about August 11, 2010, defendants "appeared unannounced at Harold and Dorita Weksler's home with the intent to have Harold sign estate planning documents"; (4) Sobel initiated contact with Harold via telephone and Gary "pressur[ed] his father to instruct his caregivers to accept a phone call from Mr. Sobel"; (5) Sobel and

4

Gary visited Harold while he was hospitalized "for the purposes of causing Harold Weksler to change his estate plan and/or give more money to Gary Weksler"; (6) During most, if not all, of the conversations between defendants and Harold, they falsely represented to Harold that Gary had been cut out of Harold's estate plan; and (7) Gary "repeatedly harassed, annoyed, pressured, and unduly influenced Harold Weksler into giving him [additional] money," taking Harold to the bank "to compel him to withdraw large amounts of cash."

Defendants filed an anti-SLAPP motion, contending the actions and communications targeted by plaintiffs' complaint constituted protected prelitigation activities. The trial court denied the motion.

This timely appeal followed.

## DISCUSSION

### I

Section 425.16 was enacted to respond to the "disturbing increase in lawsuits brought primarily to chill the valid exercise of constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) The Legislature deemed it was in the public interest to "encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (*Ibid.*)

To determine whether a cause of action should be stricken under section 425.16, the statute establishes a two part test. Under the first part, defendant "has the burden of making a prima facie showing that the plaintiff's allegations are subject to that section," meaning that the causes of action arise from a protected activity. (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1397.) "Once the defendant has met its burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the cause of action. [Citation.] Only a cause of action that satisfies both parts of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute. [Citation.]" (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 788.)

5

"An appellate court independently reviews the trial court's order denying an anti-SLAPP motion. [Citation.] In our evaluation of the trial court's order, we consider the pleadings and the supporting and opposing affidavits filed by the parties on the anti-SLAPP motion. In doing so, we do not weigh credibility or determine the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. [Citation.]" (*Bailey v. Brewer*, *supra*, 197 Cal.App.4th at p. 788.)

II

Under the first part of the anti-SLAPP inquiry, defendants must make a prima facie showing that plaintiff's causes of action arose from defendants' engagement in protected activities. Section 425.16, subdivision (b)(1) protects "any act . . . in furtherance of [a] person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." This includes "any written or oral statement or writing made before a . . . judicial proceeding" or "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (*Id.* at subd. (e)(1) & (2).) "Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) Moreover, "communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . [and] such statements are equally entitled to the benefits of section 425.16. [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer, & Susman* (1996) 47 Cal.App.4th 777, 784.) "[I]f a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration,"' [citation] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) "In determining whether a statement was made in

6

anticipation of litigation contemplated in good faith and under serious consideration, this court may look to how this test has been applied in cases involving the litigation privilege of Civil Code section 47. [Citation.] Cases applying the litigation privilege have held that 'if the statement is made with *a good faith belief in a legally viable claim* and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. [Citation.]' [Citation.]" (*Bailey v. Brewer*, *supra*, 197 Cal.App.4th at p. 790.)

This case presents a scenario in which plaintiffs' causes of action "combine[] allegations of conduct that is protected by the anti-SLAPP statute with conduct that is not." (*Cho v. Chang* (2013) 219 Cal.App.4th 521, 523.) We look to which aspects of defendants' conduct, identified in plaintiffs' complaint, constitute protected activities. (*Id.* at p. 527.)[4]

A.      *Protected Activities*

Defendants have made a prima facie showing that their attempts to have Harold alter his estate documents, as well as their meetings with Harold and Dorita, were undertaken in anticipation of litigation contemplated in good faith and under serious consideration. Through their declarations, Gary and Sobel contended their "plan from the outset was that [they] would proceed with litigation." Gary hired Sobel, a litigation attorney, for the purpose of instituting a lawsuit against Kumetz and Dorita. Defendants threatened litigation to both Harold and Kumetz, who was a cotrustee of Harold's and Dorita's trust. Additionally, defendants held meetings with Harold, then with Harold and

---

[4]      "It would make little sense if the anti-SLAPP law could be defeated by a pleading . . . in which several claims are combined into a single cause of action, some alleging protected activity and some not. Striking the entire cause of action would plainly be inconsistent with the purposes of the statute. Striking the claims that invoke protected activity but allowing those alleging nonprotected activity to remain would defeat none of them." (*Cho v. Chang*, *supra*, 219 Cal.App.4th at p. 527.) We note that prior decisions have disagreed with this approach. (See, e.g., *id.* at pp. 526–527.) However, for the reasons stated in *Cho v. Chang*, a prior Division 4 opinion, we adhere to the approach of striking the protected activities while allowing the nonprotected theories to remain.

Dorita, to "clarify the issues," "gather the evidence necessary to evaluate the case and proceed with litigation," evaluate "how best to meet all of the Wekslers' financial needs," and "discuss[] Gary's monthly support from his father and his inheritance." After realizing there "would be no fruitful negotiations or compromise," defendants filed two petitions for the purpose of reinstating Gary as a beneficiary of Harold's estate: a petition for appointment of a probate conservator for Harold (which was dismissed after Harold's death), and a petition to set aside the 2004 trust amendment eliminating Gary as a beneficiary. Both petitions were premised on the allegation that Harold was susceptible to fraud and undue influence by Dorita and Kumetz, who orchestrated Gary's exclusion from Harold's estate and reduced monthly support against Harold's wishes. (See *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1266 ["[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation."].)

Plaintiffs argue there is no legitimate nexus between defendants' actions and the resulting litigation. However, the record shows defendants' actions and statements were "made 'in connection with' the anticipated litigation" against Dorita and Kumetz, who were managing Harold's finances. (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1263-1264.) Defendants' efforts to reinstate Gary into Harold's will and secure a higher monthly support amount was protected activity conducted in an effort to settle the matter without litigation. (See *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 907-908.) Thus, defendants state that their intention from the beginning was to pursue litigation against Kumetz and Dorita *in order to* restore Gary's inheritance and monthly support.[5] The targeted statements and actions in the complaint, as far as they relate to defendants' efforts to have Harold "sign estate planning

---

[5] As is apparent from the record, defendants' plan from the outset was to pursue the petition to set aside the trust amendment, since Dorita and Kumetz, as cotrustees, were the intended targets of their prospective litigation. The fact that they first pursued a petition for conservatorship does not impair their position, as this petition alleged the same underlying issue that Harold, unable to manage his own finances, was being unduly influenced by Dorita and Kumetz to impair Gary's financial interests.

documents" or persuade Harold and Dorita to reinstate Gary into the will and raise his monthly support, were made in connection with the anticipated litigation. We are not persuaded by plaintiffs' arguments to the contrary.

The trial court found, and plaintiffs now claim, that defendants' petitions, filed in September 2011 and September 2012, were "not even close in time and not made in serious consideration of litigation." Plaintiffs rely on *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1378 (*Eisenberg*). *Eisenberg*, however, does not stand for the proposition that a delay in pursuing litigation strips the defendant of the protections of section 425.16. Instead, it quotes *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 36 (*Edwards*): "[T]he [litigation] privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute . . . ." The usage of the word "imminent" in *Edwards* has been heavily criticized. (See, e.g., *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 268 ["litigation privilege is not conditioned upon an 'imminency' requirement separate from the requirement that prelitigation statements be made in serious and good faith consideration of litigation"]; *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1269 ["*Edwards* did not hold that the statements at issue were made too long before the filing of the lawsuit to constitute an 'imminent' threat of litigation"].) Even if an imminency requirement exists, the proper inquiry is whether imminent access to the courts was *seriously proposed*, not whether litigation was *actually* filed shortly after. We find defendants' repeated threats to sue Kumetz and Dorita sufficient to meet this standard.

Plaintiffs also contend defendants have failed to show they had a "good faith belief in a legally viable claim." (*Bailey v. Brewer*, *supra*, 197 Cal.App.4th at p. 790, italics omitted.) They argue "Gary certainly cannot state any viable cause of action which could have possibly enabled him to compel Harold and Dorita Weksler to create the estate plan *he* wants, or to compel Harold or Dorita to *give* him money." Plaintiffs overlook the fact that the contemplated litigation did not allege Gary's "right to compel his father to create an estate plan which conforms to his own personal desires." Instead,

9

defendants were contemplating litigation against plaintiffs based on a reasonable belief that the 2004 amendment was procured by undue influence or fraud. When Gary and Harold spoke with an estate attorney in early 2010 and discovered the existence of the amendment, Gary alleged that Harold was "furious" and wanted to reinstate Gary right away. They were told that Dorita would need to consent to the change. When Gary met with Harold in mid-2010, Harold was again under the impression Gary was "fully provided for" and denied "cutting [him] out," reflecting his intent to retain Gary as a beneficiary to his estate and providing evidence that he was either deceived or uninvolved in the execution of the amendment. Further, when defendants met with Dorita and Harold, Dorita represented to defendants that "Gary's inheritance was intact," leading them to believe that Dorita intended to deceive them. Based on Harold's and Dorita's representations to defendants and defendants' "futile attempts to obtain the necessary [t]rust documents," defendants adequately demonstrated a good faith belief in a legally viable claim against Dorita and Kumetz.[6]

Finally, plaintiffs contend defendants' prelitigation communications and activities were illegal as a matter of law, undeserving of the protections of section 425.16. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317.) They allege that Sobel violated Rule 2-100 of the Rules of Professional Conduct by communicating with Harold and Dorita without the consent of Kumetz, their attorney, and that Gary and Sobel violated Penal Code section 368, subdivision (b)(1), the dependent adult abuse statute. Sobel's alleged violation of a Rule of Professional Conduct does not forfeit protection since "illegal" conduct, in the

---

[6]     Plaintiffs advance a policy argument that protecting acts of "self help to cause dependent elders to execute an estate plan" would render every will or trust contest based on undue influence, duress, or lack of capacity vulnerable to an anti-SLAPP motion. We disagree. A typical will or trust contest does not arise from protected activities, as the alleged wrongdoer generally is not contemplating litigation. However, if and when the alleged wrongdoer is engaged in an act in furtherance of his right of petition or free speech, and a will or trust contest arises from it, we see no reason why the section 425.16 should not apply. (§ 425.16 ["it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process"].)

context of section 425.16, is "limited to criminal conduct." (Cf. *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1169 ["[V]iolation of an attorney's duties of confidentiality and loyalty to a former client cannot be 'illegal as a matter of law.'"].) Moreover, to establish defendants' allegedly nonprotected criminal conduct, there must be "uncontroverted and uncontested evidence that establishes the crime as a matter of law." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386.) Whether Gary and Sobel "willfully" committed elder abuse is contested, and defendants' state of mind cannot be determined as a matter of law.

We conclude that under the showings made, defendants' joint efforts to persuade Harold, and on one occasion, Dorita, to reinstate Gary as a beneficiary of Harold's estate were protected activities under section 425.16, subdivision (b)(1). In section III of this opinion, we consider whether plaintiffs can show a probability of prevailing on the merits as to the claims based on these protected activities.

B.      *Nonprotected Activities*

Plaintiffs' complaint targets activities, undertaken by Gary alone, that are not protected by section 425.16. The allegations state that Gary "repeatedly harassed, annoyed, pressured, and unduly influenced Harold Weksler into giving him . . . additional funds" and that Gary "took Harold to the bank to compel him to withdraw large amounts of cash." There is no indication, either in the complaint or Gary's declaration, that these alleged acts were undertaken as settlement negotiations or were in any way related to the petitions contemplated by defendants and defendants do not contend these acts were protected. We conclude these alleged acts, undertaken by Gary alone, were not protected activities, and not subject to the anti-SLAPP statute. As such, plaintiffs' causes of action, insofar as they rely upon these specific allegations against Gary, survive the motion. (See *Cho v. Chang*, *supra*, 219 Cal.App.4th at p. 527.)

III

The second part of our inquiry requires us to evaluate the merits of plaintiffs' causes of action. If, however, the litigation privilege of Civil Code section 47 applies, plaintiffs cannot demonstrate a probability of prevailing and the causes of action must be

11

stricken. (*Rohde v. Wolf, supra*, 154 Cal.App.4th at pp. 37-38.) The litigation privilege of Civil Code section 47 applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Andersen* (1990) 50 Cal.3d 205, 212.) "Prelitigation statements are protected under [Civil Code] section 47 when they are made in connection with a proposed litigation that is 'contemplated in good faith and under serious consideration.' [Citation.]" (*Rohde v. Wolf, supra*, at p. 37.)

Whether defendants' protected activities are privileged under Civil Code section 47 is determined under the same test we utilized under section 425.16, subdivision (b)(1). "Because we have held that the statements [and actions] were . . . protected activit[ies] under the anti-SLAPP statute, they are also privileged under [Civil Code] section 47 as statements made in anticipation of litigation 'contemplated in good faith and under serious consideration.' [Citation.]" (*Rohde v. Wolf, supra*, 154 Cal.App.4th at p. 38.) Since defendants' protected activities were absolutely privileged under Civil Code section 47, plaintiffs cannot meet their burden to show a probability of prevailing on their causes of action, at least as to defendants' protected activities.[7]

We conclude the trial court erred in denying defendants' anti-SLAPP motion in its entirety. Because plaintiffs' allegations against Sobel arose wholly out of protected activities, the complaint should be stricken as to Sobel. Plaintiffs' allegations against Gary's *protected* activities, should be stricken from the complaint pursuant to section 425.16. The trial court correctly denied the motion insofar as it sought to strike plaintiffs' allegations that Gary "repeatedly harassed, annoyed, pressured, and unduly influenced Harold Weksler into giving him . . . additional funds" and that Gary "took Harold to the bank to compel him to withdraw large amounts of cash," since these alleged

---

[7] Defendants also raise deficiencies in the complaint that would prevent plaintiffs from prevailing on the merits. Because the litigation privilege serves as a substantive defense to both of plaintiffs' causes of action, we do not address defendants' additional arguments.

12

acts were unprotected activities under section 425.16.

## DISPOSITION

The order is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



EPSTEIN, P. J.


We concur:



WILLHITE, J.



COLLINS, J.