[No. B225642. Second Dist., Div. Four. July 19, 2011.]

STAFFORD BAILEY, Plaintiff and Respondent, v.
MICHAEL BREWER et al., Defendants and Appellants.

COUNSEL

Blakely Law Group and Brent H. Blakely for Defendants and Appellants.

Rufus-Isaacs Acland & Grantham and Alexander Rufus-Isaacs for Plaintiff and Respondent.

OPINION

MANELLA, J.—

## INTRODUCTION

Michael Brewer and Brewer Media Associates, Inc., appeal from an order of the superior court denying their special motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] Appellants contend the trial court erred in denying their anti-SLAPP motion because (1) respondent Stafford Bailey's claims against appellants are subject to being stricken under the anti-SLAPP statute as they arose from protected activity and (2) respondent's claims are barred by the litigation privilege in Civil Code section 47. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On November 24, 2009, respondent, doing business as 24/7 Productions, filed a complaint against Brewer and his wholly owned and controlled corporation, Brewer Media Associates, Inc., in Los Angeles Superior Court. In the complaint, respondent alleged that he is a documentary filmmaker who made a documentary film entitled, Blacks Without Borders: Chasing The American Dream In South Africa. Respondent had employed Brewer as a cameraman to shoot the film on a "deferred compensation" basis, which meant that Brewer would not be paid until the film was released. Respondent further alleged that Brewer's work on the film was unsatisfactory and required respondent to hire another cameraman and reshoot much of the footage. The costs of the reshoot exceeded the deferred compensation that respondent had agreed to pay Brewer.

Respondent further alleged that "Brewer has claimed without any legal basis that he and [respondent] were partners in producing the [f]ilm, and/or that he (or Brewer Media) owns the footage used in the [f]ilm." Respondent

---

[1] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

also alleged that Brewer filed "a lawsuit in 2006 against [respondent] in the Los Angeles Small Claims Court, case no. LAV 06V02398 ('2006 Lawsuit'). In that lawsuit, [Brewer] claimed that he and [respondent] were partners, that [respondent] had misappropriated partnership assets, and that he was entitled to a share thereof. The matter went to trial and resulted in a finding that [respondent] owed nothing to Brewer."

Respondent stated three causes of action in his complaint. In the first cause of action for intentional interference with contractual relationship, respondent alleged (1) that he "entered into a contract with Showtime on or about October 18, 2008 whereby [respondent] granted a license to Showtime to broadcast the [f]ilm from February 1, 2009, for one year, and Showtime agreed to pay [respondent] a $25,000 license fee"; (2) that appellants "caused a letter to be written to Showtime dated April 13, 2009, falsely claiming that Brewer Media was the owner and licensor of the footage that comprised the [f]ilm, and that the [f]ilm was Brewer's 'brain child,' and demanding that Showtime cease to broadcast the [f]ilm and provide an accounting"; (3) that appellants knew about his contract with Showtime Networks Inc., and intentionally induced Showtime to breach the contract by writing the cease-and-desist letter; and (4) that as a result of appellants' conduct, "Showtime refused to pay [respondent] the agreed licensing fee."

In the second cause of action for intentional interference with economic relationship, respondent alleged (1) that he "worked hard over the years to establish close relationships with TAC [(The Africa Channel)] and the organizers of PAFF [(the 2009 Pan African Film Festival)], and others"; (2) that appellants knew or should have known about these relationships; (3) that appellants "intentionally sought to disrupt [respondent's] economic and contractual relationships with TAC, PAFF and others, by falsely claiming to those parties that they had a partnership or copyright or other legal interest in the [f]ilm"; (4) that appellants knew or should have known that these claims had no legal basis because the 2006 lawsuit had been decided in respondent's favor; and (5) that as a direct result of appellants' conduct, TAC refused to license the film and the organizers of PAFF refused to allow the film to be shown at PAFF.

In the third cause of action for declaratory relief, respondent sought a judicial determination whether he owed Brewer any payment for Brewer's work on the film because Brewer's "errors cost [respondent] far more than [respondent] would otherwise have owed Brewer." Respondent sought a judgment that he owed Brewer nothing because the expenses for the reshoot offset the deferred compensation owed to Brewer.

On February 19, 2010, appellants filed a special motion to strike the first and second causes of action pursuant to the anti-SLAPP statute. In the

anti-SLAPP motion, appellants contended these two causes of action are "based on cease and desist letters that [appellants] sent to Showtime, The Africa Channel, The Pan African Film Festival and others in anticipation of litigation." Appellants contended that the cease-and-desist letters were protected under section 425.16, subdivision (e)(1) and (2) as statements made in connection with an issue under consideration or review before a judicial proceeding. Thus, appellants argued, the first two causes of action were within the scope of the anti-SLAPP statute. Appellants further contended that the cease-and-desist letters were absolutely privileged under Civil Code section 47. Accordingly, respondent could not show that he would prevail on the first two claims in his complaint because those claims were barred as a matter of law.

In support of the anti-SLAPP motion, Brewer filed a declaration in which he stated (1) that he entered into a partnership with Bailey to "jointly develop, produce and exploit an episodic 'lifestyle' television program under the name Global Living Productions"; (2) that he filmed the content for the program, including interviews; (3) that the interviewees signed release forms stating that this was a coproduction between his company, Brewer Media Associates, and Bailey's company, 24/7 Productions; (4) that after the shooting was completed, he gave Bailey all of the signed release forms and the master field tapes; (5) that Bailey subsequently refused to recognize that a joint partnership existed and claimed that he exclusively owned all rights to the program; (6) that Bailey had all of the interviewees sign new releases without any mention of Brewer or his company; (7) that Bailey edited the program and changed its name to "Blacks Without Borders" and began to distribute the program; (8) that in response, "my attorneys and I sent cease and desist communications to Showtime, The Africa Channel, the Pan African Film Festival and the Schomburg Center informing them of my rights in the [p]rogram and demanding them to cease and desist the exhibit and exploitation of the [p]rogram"; and (9) that at the time he sent the cease-and-desist communications, he had a "good faith intention to file suit against Bailey if we could not resolve the dispute by way of settlement."

Appellants also attached a copy of the cease-and-desist letter to Showtime. In the letter, Bradley J. Gross of the law firm of Becker & Poliakoff informed Showtime (1) that he represented "Brewer Media Associates, Inc. ('Brewer'), the owner and licensor of the footage comprising a documentary called, 'Blacks Without Borders' "; (2) that his client's footage had been "unlawfully incorporated" into the documentary; (3) that the film was "the brainchild of Brewer, and [wa]s the result of dozens of hours of interviews and footage, all of [which] were filmed in South Africa"; (4) that "[a]ll of the footage comprising the [d]ocumentary belongs to Brewer, and 24/7 Productions usurped that footage in violation of [his] client's valuable intellectual property rights"; and (5) that he had contacted all media outlets that had received

the film and that "the Pan African Film Festival, the Africa Channel and TV One had all refused to accept and show the [d]ocumentary upon learning of the facts described above."

Respondent opposed the anti-SLAPP motion on the ground that the anti-SLAPP statute and the litigation privilege applied only to litigation "contemplated in good faith and under serious consideration," and that appellants had not shown that the cease-and-desist letter to Showtime was made in connection with anticipated litigation that Brewer was contemplating in good faith. According to respondent, the letter did not reference any litigation or contain an imminent threat to file a lawsuit. Moreover, respondent contended, Brewer's statement that he intended to file suit against Bailey must be rejected because Brewer had filed a small claims court action on the same grounds as in the instant anticipated litigation and had lost after a contested hearing.

Respondent attached a copy of the small claims action as part of a request for judicial notice. In the small claims action, Brewer alleged that the parties "entered into a joint venture to produce a television program, 'Global Living.' " He further alleged that respondent "breach[ed] [his] fiduciary duties to the partnership, misappropriat[ed] . . . partnership assets and repudiat[ed] . . . the partnership." Brewer sued to wind up the partnership and for "partial value of partnership assets misappro[priated]." On June 5, 2006, after a contested hearing, the small claims court concluded that "[d]efendant does *not owe* plaintiff any money on plaintiff's claim."

In their reply to respondent's opposition, appellants contended (1) that prelitigation statements need not be immediately followed by a lawsuit in order to be considered protected by the anti-SLAPP statute and the litigation privilege and (2) that the litigation privilege applies to claims that are not legally viable. Appellants asserted that it was irrelevant whether Brewer had filed a prior lawsuit against Bailey. Moreover, they claimed "the ruling in small claims court did not mention anything regarding the rights to the [f]ilm, . . . [and] [t]hus, Brewer is not precluded from litigating the issue of whether or not the parties had formed a partnership with regards to the [f]ilm."

After a hearing, the superior court denied the anti-SLAPP motion. In its written order denying the motion, the trial court found that appellants' prelitigation letters and communications to Showtime and other media entities formed the basis of respondent's first and second causes of action; it concluded, however, that appellants' letters and communications were not protected by the anti-SLAPP statute and the litigation privilege because the dispute between the parties had not " 'ripened into a proposed proceeding.' "

(*Haneline Pacific Properties, LLC v. May* (2008) 167 Cal.App.4th 311, 319 [83 Cal.Rptr.3d 919] ["The litigation privilege 'arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute.' [Citation.]"].) Having determined that appellants could not demonstrate their entitlement to the benefits of the anti-SLAPP statute, the trial court denied the anti-SLAPP motion. The court further found that respondent had produced evidence that would entitle him to prevail on the merits of his claims.

The order denying the anti-SLAPP motion was entered July 21, 2010. Appellants filed a timely notice of appeal from the order.

## DISCUSSION

■ To determine whether a cause of action should be stricken under the anti-SLAPP statute, section 425.16 establishes a two-part test. Under the first part, the party bringing the anti-SLAPP motion has the initial burden of showing that the cause of action arises from an act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].) Once the defendant has met its burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the cause of action. (*Ibid.*) Only a cause of action that satisfies both parts of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

An appellate court independently reviews the trial court's order denying an anti-SLAPP motion. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713].) In our evaluation of the trial court's order, we consider the pleadings and the supporting and opposing affidavits filed by the parties on the anti-SLAPP motion. In doing so, we do not weigh credibility or determine the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).)

Here, the trial court denied the anti-SLAPP motion on the ground that appellants had failed to meet their burden of demonstrating that the activity underlying respondent's claims was protected. The trial court determined that appellants' cease-and-desist letters and communications to Showtime and

various other media outlets formed the basis of respondent's first two causes of action. The court held, however, that the letters and communications did not fall within the scope of the anti-SLAPP statute because they were not in connection with a dispute that had " 'ripened into a proposed proceeding.' " (*Haneline Pacific Properties, LLC v. May, supra,* 167 Cal.App.4th at p. 319.) Appellants contend the trial court erred as a matter of law in making this determination. For reasons other than those identified by the trial court, we conclude there was no error in denying the anti-SLAPP motion.

As an initial matter, we independently conclude that appellants' cease-and-desist letters and communications to Showtime and other media outlets formed the basis of respondent's first two causes of action in his complaint. Although the cease-and-desist letters and communications were not attached to the complaint and appellants produced only one cease-and-desist letter with the anti-SLAPP motion, we make this determination based upon our independent review of the record. The complaint alleged that appellants had sent a letter to Showtime and made certain communications to other media outlets that caused those media outlets to refuse to broadcast or show the film. The anti-SLAPP motion asserted that these letters and communications were cease-and-desist letters and communications from appellants' attorneys. On this record, there was sufficient evidence to conclude that the cease-and-desist letters and communications formed the basis of respondent's first two causes of action. We next address whether these letters and communications were protected under the anti-SLAPP statute.

## A. *Prelitigation Statements Protected Under Section 425.16*

Section 425.16 protects any " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e).) Such acts include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (*Id.,* subd. (e)(2).) Thus, "statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35 [64 Cal.Rptr.3d 348].) Moreover, " 'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], [and] such statements are equally entitled to the benefits of section 425.16.' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564].) "Accordingly, although litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated

in good faith and under serious consideration" ' [citation] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 [73 Cal.Rptr.3d 383], quoting *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*) [litigation privilege case].)

    ■  In determining whether a statement was made in anticipation of litigation contemplated in good faith and under serious consideration, this court may look to how this test has been applied in cases involving the litigation privilege of Civil Code section 47. (*Flatley, supra*, 39 Cal.4th at pp. 322–323 [although the scope of § 425.16 and Civ. Code, § 47 are not identical, the latter may be used "as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry—that is, by examining the scope of the litigation privilege to determine whether a given communication falls within the ambit of subdivision (e)(1) and (2)"].) Cases applying the litigation privilege have held that "if the statement is made with *a good faith belief in a legally viable claim* and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. [Citation.]" (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 919 [20 Cal.Rptr.3d 385], italics added.) A party resisting the assertion of the litigation privilege, however, must do more than simply "assert[] that litigation to which the statement is related is without merit, and therefore the proponent of the litigation could not in good faith have believed it had a legally viable claim. To adopt such an interpretation would virtually eradicate the litigation privilege for all but the most clearly meritorious claims." (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1489 [74 Cal.Rptr.3d 1] (*Feldman*).)

    Here, respondent asserts that appellants' prelitigation statements were not protected under section 425.16 because they related to litigation barred as a matter of law. Appellants counter that they were not threatening to relitigate the claims decided in the small claims action. Furthermore, appellants assert that the subject of the prior lawsuit is irrelevant, because statements related to claims barred by the doctrine of res judicata are protected under section 425.16. We address each of these contentions in turn.

## B.  *Res Judicata Effect of Small Claims Action*

    Appellants argue that "the ruling in small claims court did not mention anything regarding the rights to the [f]ilm, . . . [and] [t]hus, Brewer is not precluded from litigating the issue of whether or not the parties had formed a partnership with regards to the [f]ilm." As an initial matter, we note that the

question whether appellants are barred from filing the proposed lawsuit against respondent under the doctrine of res judicata is a preliminary decision based upon undisputed evidence in the record. (Cf. *Flatley, supra,* 39 Cal.4th at p. 320 [in determining that defendant's acts are not protected by § 425.16, whether defendant's underlying conduct is illegal as a matter of law is preliminary].) Thus, it has no binding effect in any subsequent proceedings in this case.

■ A small claims plaintiff is collaterally estopped from relitigating the same issue in superior court where the record is sufficiently clear to determine that the issue was litigated and decided against the plaintiff in the small claims action. (*Pitzen v. Superior Court* (2004) 120 Cal.App.4th 1374, 1381 [16 Cal.Rptr.3d 628].) In addition, it is well settled that the claim preclusion aspect of the doctrine of res judicata applies to small claims judgments. (*Id.* at p. 1382, citing *Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 907 [92 Cal.Rptr.2d 151].) Here, the record is sufficiently clear to permit us to determine that the issue litigated and decided against Brewer in the small claims action is substantially identical to the issue in litigation contemplated by appellants against respondent in this matter.

In the small claims action, Brewer sued respondent for damages based upon a purported "joint venture to produce a television program, 'Global Living.' " He sought a "dissolution and winding up of the partnership as a result of defendant's breach of fiduciary duties to the partnership, misappropriation of partnership assets and repudiation of the partnership." After a contested hearing, the small claims court held that respondent did not owe Brewer any money on his claim. From this evidence, we conclude that the issue litigated and decided was whether respondent had misappropriated any asset in which Brewer claimed a proprietary interest arising from the purported partnership to produce a television program called "Global Living." The small claims court's decision necessarily found that respondent had not misappropriated any asset of the alleged partnership.

In the instant litigation, Brewer's declaration asserted he had "a good faith intention to file suit against Bailey if [the parties] could not resolve the dispute by way of settlement." The basis for the lawsuit was Brewer's alleged rights in a television program whose name had been changed to "Blacks Without Borders." Brewer alleged (1) that he had entered into "a partnership with [respondent] to jointly develop, produce and exploit . . . [a] television program under the name Global Living Productions"; (2) that Brewer traveled to South Africa for two weeks and filmed content for the program; (3) that respondent subsequently refused to recognize that a joint partnership existed and claimed exclusive ownership of all rights to the program; and (4) that respondent began to distribute the program without Brewer's knowledge or consent.

Brewer's declaration demonstrated that the issue he contemplated litigating against respondent was whether respondent had misappropriated Brewer's rights in a partnership to develop, produce, and exploit a television program called Global Living Productions. This issue is substantially identical to the issue litigated and decided against Brewer in the small claims action. Both suits involved (1) a purported partnership to produce a television program called "Global Living"; (2) repudiation of that partnership; and (3) misappropriation of partnership assets. In the small claims action, Brewer lost on his claim that respondent misappropriated any partnership assets related to the television program. Thus, appellants are collaterally estopped from relitigating this issue in superior court, and the contemplated litigation is barred as a matter of law.

Appellants contend that the record of the small claims action is inadequate to demonstrate that they are barred from litigating copyright claims to the film footage. They note that the ruling in the small claims action never mentioned anything about rights to the film. Additionally, the ruling never stated that the assets of the partnership included copyright claims to the footage. Appellants thus contend they are not precluded from litigating their copyright claims. We disagree.

Appellants have never suggested that their interest in the documentary film has changed since Brewer filed the small claims action. The Brewer declaration stated that Brewer had filmed interviews as part of a purported partnership to produce and exploit a television program, that respondent had repudiated that partnership and unlawfully claimed exclusive ownership in the footage, and that respondent was seeking to distribute a television program comprising that footage without Brewer's consent. Thus, the footage used in the film was an asset of the partnership formed to create, produce, and exploit the television program. The claim for misappropriation of the assets of that joint partnership, raised in the small claims action, necessarily encompassed any claim for violating Brewer's copyright in the footage used to create the film. Brewer lost on that claim after a contested hearing. Thus, he is barred from relitigating the same issue in superior court. We next turn to whether statements related to barred claims are protected under section 425.16.

## C. *Meritless Claims Under Section 425.16*

■ It is well settled that a party seeking to invoke the protections of section 425.16 for prelitigation statements must demonstrate that the statements "relate[] to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment, supra,* 41 Cal.4th at p. 1251.) It is equally well settled that a claim is not legally viable if it cannot be relitigated

in court under the doctrine of res judicata. (See, e.g., *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077, 1083 [4 Cal.Rptr.3d 468] [action based on theories of negligence not viable in state court where prior federal action established that defendants' actions were objectively reasonable]; *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1405, fn. 10 [69 Cal.Rptr.3d 561] [where landlord's entitlement to retain security deposit had been decided against small claims plaintiff, her same claim in superior court "was wholly without merit"].) The question before us is whether Brewer's statements of intent to litigate claims previously resolved against him could have been contemplated in good faith. We conclude the answer is no.

We recognize that a party need not demonstrate that it would succeed on the merits of the contemplated litigation in order to invoke the protection of the litigation privilege or section 425.16. (Cf. *Feldman, supra,* 160 Cal.App.4th at p. 1489 [assertion "that litigation to which the statement is related is without merit" not sufficient to avoid litigation privilege].) Here, however, Brewer's entitlement to assets of the "Global Living" joint partnership was resolved against him and in favor of respondent. Because the statements related to proposed litigation barred by the doctrine of res judicata, such statements did not relate to litigation "contemplated in good faith and under serious consideration." Accordingly, we conclude Brewer was not entitled to invoke the protections of the anti-SLAPP statute.

Although section 425.16 must be construed broadly, our holding comports with the purpose of section 425.16, which is to protect activity that furthers the right to free speech or to petition for redress of grievances. (See § 425.16, subd. (a) ["[T]his section shall be construed broadly."]; *Flatley, supra,* 39 Cal.4th at p. 324 [§ 425.16 "does not protect activity that . . . is not in furtherance of constitutionally protected speech or petition rights"].) Here, it was asserted that the prelitigation statements were made in furtherance of appellants' right to petition the courts for redress of their grievances against Bailey. The right to petition, however, is not implicated where a party already has exercised that right, has lost on the merits, and is seeking to relitigate the same action. (Cf. *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 64 [124 Cal.Rptr.2d 507, 52 P.3d 685] [" 'The right to petition is not absolute, providing little or no protection for baseless litigation.' [Citation.]"].) Thus, we conclude that protecting the prelitigation statements in this case would not further the purpose of section 425.16.

Appellants argue that under our Supreme Court's holding in *Action Apartment*, even meritless and malicious claims are protected by the litigation privilege; accordingly, section 425.16 should apply equally to claims barred by res judicata. *Action Apartment* addressed the validity of a municipal

ordinance penalizing landlords for bringing eviction proceedings with malice and without probable cause. The court determined that the municipality was effectively attempting to create a malicious prosecution-like tort that would (a) be limited in its applicability to landlords and (b) lack the customary requirement that the plaintiff demonstrate favorable termination. (*Action Apartment, supra*, 41 Cal.4th at pp. 1243, 1249.)[2] The court held the municipal ordinance was preempted by the litigation privilege. (*Id.* at pp. 1249–1250.)

■    *Action Apartment* is distinguishable from the instant case. First, the scope of protection for prelitigation statements under the litigation privilege of Civil Code section 47 is not co-extensive with the scope of protection for prelitigation statements under Code of Civil Procedure section 425.16. (*Flatley, supra*, 39 Cal.4th at p. 323 ["Notwithstanding this relationship between the litigation privilege and the anti-SLAPP statute, . . . the two statutes are not substantively the same."].) Thus, *Action Apartment* does not control our interpretation of section 425.16.

Second, *Action Apartment* did not address the applicability of a state statute—section 425.16—to a party barred from relitigating a claim or issue by the doctrine of res judicata. The court never addressed the doctrine of res judicata, and it expressly recognized that state law could provide exceptions to the litigation privilege. (*Action Apartment, supra*, 41 Cal.4th at p. 1246 [discussing cases finding suits under other state laws not preempted by litigation privilege].)

Moreover, our holding that a prelitigation statement made in connection with a claim barred by the doctrine of res judicata is not protected under section 425.16 does not implicate the "core policy" underlying Civil Code section 47, which is to protect access to the courts. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1196 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) A party who has used the court process to litigate a claim to its conclusion does not need further access to the courts to relitigate that same claim. In short, neither the holding in *Action Apartment* nor the policy underlying the litigation privilege would support a holding that forces a litigant to expend time and money to defend an anti-SLAPP motion based upon statements made in connection with claims barred by the doctrine of res judicata. (Cf. *Action Apartment, supra*, 41 Cal.4th at p. 1251 [" 'No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation.' "].)

---

[2] The elements of a malicious prosecution action are favorable termination, lack of probable cause, and malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 [46 Cal.Rptr.3d 638, 139 P.3d 30].)

■ In sum, we conclude the trial court did not err in denying the anti-SLAPP motion because appellants' acts are not entitled to the protection of the anti-SLAPP statute. In reaching this conclusion, we note that our ruling is a narrow one. It applies only in cases where the proponent of the contemplated litigation has been barred from relitigating the contemplated claims under the doctrine of res judicata. In such circumstances, no reasonable plaintiff could have believed in good faith that the contemplated litigation was legally viable. (Cf. *Blanchard v. DIRECTV, Inc., supra,* 123 Cal.App.4th at pp. 920–921 [plaintiff's belief that it had a legally viable claim was supported by success in previous federal action on similar issue].)

## DISPOSITION

The order is affirmed. Respondent is awarded costs.

Willhite, Acting P. J., and Suzukawa, J., concurred.