Filed 1/10/23  Gradetech v. City of San Jose CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GRADETECH, INC., <br><br>    Plaintiff and Appellant, <br><br>v. <br><br>CITY OF SAN JOSE, <br><br>    Defendant and Respondent. | A165825 <br><br> (Santa Clara County Super. Ct. <br> No. 18CV325319) |

Plaintiff Gradetech, Inc. (Gradetech) sued defendant City of San Jose (City) in a single-count complaint alleging breach of contract.  Gradetech's suit seeks to recover compensation for multiple cost overages arising from Gradetech's construction of a freestyle bike park.  The City cross-complained, asserting that Gradetech's claims for cost overages were false claims within the meaning of the False Claims Act (Gov. Code, §§ 12650 & 950 et seq.), and certain municipal code sections.  The City also asserted several breach of contract causes of action and two claims for declaratory relief.

Gradetech responded by filing a special motion to strike the entire cross-complaint under Code of Civil Procedure section 425.16 (anti-SLAPP statute).  The trial court partially denied and partially granted the motion,

1

and found it moot as to several causes of action the City withdrew. The trial court also denied both parties' motions for attorneys' fees.

Gradetech now appeals the partial denial of its anti-SLAPP motion, as well as the denial of its motion for attorneys' fees. It argues the trial court erroneously found certain attorney demand letters it sent the City in advance of its lawsuit were merely prerequisites to being compensated under the terms of the contract; if the trial court had properly construed these letters, Gradetech argues, it would have understood them to be protected speech under the anti-SLAPP statute.

We affirm in part and reverse and remand in part. The trial court properly found the City's breach of contract cross-claims arose out of Gradetech's performance of the contract, not the litigation process itself, and thus those claims properly survived the anti-SLAPP motion. But the same is not true of the City's cross-claims arising out of Gradetech's attorney demand letters. Those letters were protected speech under the anti-SLAPP statute because they were prepared and sent in contemplation of the litigation that Gradetech filed shortly after sending them. We reverse the trial court's order denying the anti-SLAPP motion as to the claims arising out of the attorney demand letters and remand for the trial court to determine whether the City can prevail at the second step of the anti-SLAPP analysis by demonstrating that its cross-claims predicated upon these letters possess the requisite minimal merit to proceed. In light of our disposition, we vacate the trial court's ruling on attorneys' fees.

## BACKGROUND

### A. *The Project*

The City and Gradetech executed a $2,208,300 contract (the Contract) to construct the Lake Cunningham Bike Park Construction Project (the

2

Project), effective March 28, 2016.  The City's briefing explains that this Project called for "precision sculpting of hills, curves, grades, jumps, and other park features."  The City further explains that these features require precision construction because of the "physics" involved:  these graded features must "sequentially lead[] one into the other" in a particular fashion in order to permit bike riders of different experience levels to safely navigate the park and its features.

The contract dispute underlying this case arose after Gradetech incurred multiple cost and time overages in constructing the Project.  The City emphasizes that the Contract called for 215 days but the Project was not completed for 540 days.  The City offers that the delay and cost overages were attributable to Gradetech's lack of experience in designing bike parks.  Gradetech counters that the delay and cost overages it sustained were attributable to significant "change in quantities"[1] of the movable earth involved:  according to its brief, a surveying company "concluded the Project's dirt jumps quantities more than doubled . . . ."  As a result of this change in volume, Gradetech contended it was entitled to additional compensation.

B. *The September and November Demand Letters and the Government Code Claim*

Gradetech expressed its view that it was entitled to additional compensation, and that the conditions precedent in the Contract which entitled it thereto were met,[2] by means of several letters it sent the City toward the end of 2017.  We describe these letters in detail because they

---

[1] The Contract, subject to multiple conditions precedent, entitles Gradetech to additional compensation when changes to the Project cause "a significant change in quantities."

[2] See footnote 7, *post*.

comprise the "protected" activity Gradetech claims the City retaliated against through its filing of its cross-complaint.

On September 22, 2017, counsel for Gradetech sent the City a letter notifying it of a potential claim for overages (September letter). Gradetech sought $587,795.07 arising from "additional earthwork and grading operations to change jump dirt grades that were already to grades shown on the plans in the contract documents." The total amount sought was $587,795.07, consisting of $494,830.57 for "work"; $74,224.50 for "15% markup"; and $18,740 for "survey, etc." Gradetech emphasizes this letter was sent by legal counsel and that it states: "This letter is prepared in advance of potential litigation . . . ."

Then, on November 15, 2017, Gradetech sent another letter to the City (November letter). This letter repeated the same claim for $587,795.07 in cost overage and sought additional compensation in the amounts of $102,042.36, $131,132.94, $593,674, and $439,141.06. The November letter likewise advised the City that it was sent "in advance of potential litigation." This letter also contained a certification made under penalty of perjury by Gradetech's president that he "thoroughly reviewed the attached claim . . . and know[s] its contents, and said claim is made in good faith; the supporting data is truthful and accurate; [and] that the amount requested accurately reflects the contract adjustment for which the contractor believes the owner is liable . . . ."[3]

Finally, on January 23, 2018, Gradetech submitted a verified claim for money damages against the City under Government Code section 905 et seq.[4]

---

[3] We will hereafter refer to the September letter and the November letter collectively as the attorney demand letters.

[4] The California governmental liability statutes make all public entities in California liable in tort insofar as declared by statute. (3 Witkin, Cal.

4

and San Jose Municipal Code sections 1.20.010 through 1.20.240 (Government Code claim). The Government Code claim was entitled "Notice of Claim and Claim by Gradetech, Inc." and was certified by Gradetech's president under the penalty of perjury, using the same language as in his certification in the November letter. It stated that "[t]he claim concerns . . . the contract balance for the work completed in connection with the construction of Lake Cunningham Bike Park, as well as for increased quantities on the project, potential change orders, the re-grading of jumps, and right-of-way delay." The 45-day statutory period for the City to respond lapsed and thus the Government Code claim was rejected, in the City's words, "by operation of law."[5]

## C. *Gradetech's Complaint*

Gradetech filed suit against the City on March 21, 2018, asserting a single cause of action for breach of contract. It alleged that the City did not compensate Gradetech for design changes that caused a significant change in quantities of earth; for multiple City demanded re-grading costs; for delays caused by the City; for assessing liquidated damages for delays caused by the City; and for failing to pay the Contract balance. The complaint sought compensatory damages, attorneys' fees, and costs.

---

Procedure (6th ed. 2022) Actions, § 244.) "Liability is, however, subject to a procedural condition precedent, i.e., the timely filing of a written claim in proper form with the proper officer or body. (See [Gov. Code,] §§ 905, 905.2.)." (*Ibid.*) "[T]he purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation . . . ." (*Ibid.*)

[5] Government Code section 912.4, subdivision (a), provides in pertinent part: "The board shall act on a claim . . . within 45 days after the claim has been presented."

## D. *The City's Cross-complaint*

On January 31, 2020, the City requested leave to file a cross-complaint. The trial court granted the City's request, finding as follows: "The court GRANTS the City's motion for leave to file a cross-complaint. The allegations made by the City seem logically related to the allegations in Gradetech's complaint, which makes the City's proposed cross-claims compulsory."

The City duly filed its cross-complaint on June 18, 2020, and asserted 16 causes of action. Eleven claims asserted violations of the False Claims Act,[6] six of which arose from statements made in the attorney demand letters, and five of which arose from statements made in the Government Code claim. The City also asserted these latter five claims for payment constituted violations of San Jose Municipal Code sections 1.20.010 through 1.20.240 for similar reasons.

The cross-complaint also asserted three contract causes of action, including breach of contract; breach of the implied covenant of good faith and fair dealing; and breach of the implied duty to perform with reasonable care (collectively, the breach of contract causes of action).

Finally, the cross-complaint asserted two claims for declaratory relief: cause of action No. 15 sought a declaration that Gradetech's breach of contract claim was an "impermissible cause of action," and cause of action No. 16 sought a declaration that Gradetech's method of proving damages failed for various reasons. The City sought compensatory damages of about $500,000; treble damages and penalties under the False Claims Act; costs; declaratory relief; and attorneys' fees and costs.

---

[6] The False Claims Act creates civil liability for submitting false claims to public entities. (See generally, 5 Witkin, Summary of Cal. Law (11th ed. 2022) Torts, § 884.)

### E. *Gradetech's Anti-SLAPP Motion*

Gradetech responded to the City's cross-complaint on August 28, 2020, by filing a special motion to strike pursuant to Code of Civil Procedure section 425.16. Gradetech argued that the City's cross-claims arose directly from protected speech made by means of the attorney demand letters and Government Code claim, and that the cross-claims also lacked the requisite minimal merit to proceed. (See Code Civ. Proc., § 425.16, subd. (b)(1) et seq.) Gradetech sought attorneys' fees under Code of Civil Procedure section 425.16, subdivision (c)(1).

The City opposed the motion by arguing that Gradetech failed to meet the anti-SLAPP test because none of the City's causes of action arose from an act in furtherance of the right to petition or free speech and because the City's causes of action have at least minimal merit. The City also opposed Gradetech's request for attorneys' fees and sought attorneys' fees itself.

### F. *The Trial Court's Ruling*

On December 15, 2020, the trial court granted the anti-SLAPP motion in part, denied it in part, and found it moot in part.

As to the first six causes of action alleging False Claims Act liability arising from the attorney demand letters, the trial court rejected Gradetech's argument that such letters were sent in advance of potential litigation and therefore protected under Code of Civil Procedure section 425.16. First, relying on *Kajima Engineering and Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 (*Kajima*), the trial court found that the attorney demand letters "were merely the first submissions by Gradetech to attempt to fulfill the requirements for claims for payment arising out of the parties'

7

agreement as set forth in Section 9-1.07B of the Standard Specifications."[7]

Because filing such submissions "is a prerequisite to making a Government

***

[7] Certain regulations promulgated by the City that are applicable to public works projects, entitled "Standard Specifications," were incorporated by reference into the Contract. Section 9-107B of the Standard Specifications governs completion and payment of the Project and provides, in pertinent part:

> "If the work is deemed acceptable to the [City's] Engineer in the Engineer's sole discretion, after acceptance by the Engineer, the Engineer will make a proposed final estimate in writing of the total amount payable to the Contractor [Gradetech] . . . . Within 30 days after said proposed final estimate has been submitted to the Contractor, the Contractor shall submit to the Engineer written approval of said proposed final estimate or a written statement of all claims the Contractor has arising under or by virtue of the contract . . . .

> "On the Contractor's approval, or if the Contractor files no claim within said period of 30 days, the Engineer will issue a final estimate in writing in accordance with the proposed final estimate submitted to the Contractor and within 30 days thereafter the City will pay the entire sum so found to be due. Such final estimate and payment thereon shall be conclusive and binding against both parties to the contract on all questions relating to the amount of work done and the compensation payable therefor . . . .

> "If the Contractor within said period of 30 days files claims, the Engineer will issue a semifinal estimate in accordance with the Proposed final estimate submitted to the Contractor and within 30 days thereafter the City will pay the sum so found to be due . . . .

> "The Engineer will make the final determination of any claims which remain in dispute after completion of claim review . . . .

> "Upon final determination of the claims, the Engineer shall then make and issue the Engineer's final estimate in writing and within 30 days thereafter the City will pay the entire sum, if any, found due thereon. Such final estimate shall be conclusive and binding against both parties to the contract on all questions relating to the amount of work done and the compensation payable therefor . . . ."

Code claim or filing a lawsuit," the trial court determined that Gradetech did not have a "legally viable claim" when it sent the attorney demand letters and thus, Gradetech could not have sent the letters in anticipation of litigation. Under *Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 789–790 (*Bailey*), this fact implied that the first prong of the anti-SLAPP statute was not met.[8]

Second, relying on *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 (*Wollersheim*), the trial court found that because the City's cross-complaint was compulsory, it necessarily arose out of the same " '*transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint.*' " In other words, the trial court found the City's cross-complaint was not targeting Gradetech's *lawsuit* (which would be protected speech; see *post*) but was instead targeting Gradetech's *conduct* that gave rise to lawsuit in the first place, i.e., "the bid, contract and construction related to the subject construction project," and the allegedly fraudulent claims for payment predicated thereupon.

The City withdrew its five False Claims Act causes of action arising from the Government Code claim.[9] The trial court therefore found the anti-SLAPP motion moot as to the Government Code claim causes of action.

---

[8] As discussed more fully, *post*, a successful anti-SLAPP motion must satisfy a two-prong test. First, the cross-defendant-movant must establish that the claim it seeks to strike "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1).) If this prong is met, the burden shifts to the plaintiff who must then demonstrate "a probability that the plaintiff will prevail on the claim." (*Ibid.*)

[9] Gradetech's briefing on appeal notes that although the City stated in open court it was withdrawing these claims "with prejudice," its actual filing made to withdraw these claims, submitted several months later after this

9

As to the City's three breach of contract causes of action (Nos. 12–14), the trial court likewise held they arose out of Gradetech's performance under the Contract and not the litigation process itself. The trial court thus denied the anti-SLAPP motion as to these causes of action because the first prong of the anti-SLAPP statute was not met.

However, the trial court granted Gradetech's anti-SLAPP motion with respect to the 15th and 16th causes of action seeking declaratory relief. Specifically, the trial court found that the 15th and 16th causes of action for declaratory relief were based on protected conduct "because they are based entirely on the manner in which Gradetech asserts its claim in the underlying complaint," satisfying the first prong of the anti-SLAPP analysis. The trial court then turned to the second prong, i.e., whether the City, now carrying the burden of proof, could establish a probability of prevailing on the merits as to these two claims. (Code Civ. Proc., § 425.16, subd. (b)(1).) The trial court found against the City on this prong, concluding the declaratory relief causes of action lacked "minimal merit" because the City's briefing on these points was conclusory and lacked analysis. The trial court struck the 15th and 16th causes of action as a SLAPP.

The trial court then denied Gradetech's request for attorneys' fees and costs, finding that its success in striking the final two causes of action did not amount to receiving a "practical benefit" from bringing its anti-SLAPP motion because "the bulk of the City's claims remain." The striking of the City's two claims for declaratory relief was of little import, the trial court reasoned, and the "deletion" of the False Claims Act claims based on

appeal was filed, states that the claims were withdrawn "without prejudice." (We hereby grant Gradetech's motion, dated November 23, 2021, to augment the record on appeal pursuant to California Rules of Court, rule 8.155(a)(1).) We discuss the discrepancy further, *post*, at pages 24–25.

10

statements made in the Government Code claims would not "materially limit discovery or affect the prospects of settlement."

Gradetech timely appealed. The City did not appeal.

## DISCUSSION

In this appeal, Gradetech challenges the trial court's denial of its anti-SLAPP motion with respect the six cross-causes of action arising from the attorney demand letters and the three breach of contract causes of action. Gradetech further contends the trial court abused its discretion in denying its motion for attorneys' fees and costs.

### I. Standard of Review and Background Law

#### A. *Standard of Review*

We review a trial court's ruling on an anti-SLAPP motion de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

#### B. *The Special Motion to Strike under the Anti-SLAPP Statute*

"An anti-SLAPP motion seeks to strike a '[s]trategic lawsuit against public participation.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2.) Trial courts evaluate an anti-SLAPP motion in two steps. At the first step, the court determines whether the moving party has established " 'that the challenged allegations or claims "aris[e] from" protected activity' " in which the moving party was engaged. (*Id.* at p. 884.)

Code of Civil Procedure section 425.16, subdivision (e), establishes four categories of protected activities, including the one on which Gradetech relies: "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, *or judicial body*, or any other official proceeding authorized by law." (Code Civ. Proc., § 425.16, subd. (e)(2), italics added.) Our Supreme Court has recognized that " 'communications preparatory to or in anticipation of [litigation] . . . are

11

equally entitled to the benefits of [Code of Civil Procedure] section 425.16,' " subdivision (e)(2). (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 321–322.) Thus, "if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration," ' [citations] then the statement may be petitioning activity protected by [Code of Civil Procedure] section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268; see also *Bailey*, *supra*, 197 Cal.App.4th at pp. 789–790.)

If the moving party successfully makes the showing required in step one, then the burden shifts to the non-moving party at step two to show the merit of the challenged cause of action by establishing a probability of success. (Code Civ. Proc., § 425.16, subd. (b)(1); *Wilson v. Cable News Network, Inc., supra*, 7 Cal.5th at p. 884.)

Step two of the anti-SLAPP analysis requires the non-moving party to "demonstrate that his or her claim has at least *minimal merit*, [otherwise] the trial court should deem the cause of action a SLAPP and should strike it." (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 760, italics added.) In making this determination, the court does not resolve evidentiary conflicts, but determines whether the non-moving party's showing would be sufficient to sustain a favorable judgment if accepted by the trier of fact. (*Id.* at p. 768.) The court considers the moving party's evidence only to determine if it defeats the non-moving plaintiff's showing as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) We must " 'accept as true the evidence favorable to the plaintiff . . . .' " (*Ibid.*)

## C. *The False Claims Act*

The California False Claims Act permits the recovery of civil penalties and treble damages from any person who "[k]nowingly presents or causes to be presented [to the state or any political subdivision] a false . . . claim for payment or approval." (Gov. Code, § 12651, subd. (a)(1).) A plaintiff must allege that the person had actual knowledge of the falsity of the information, acted in deliberate ignorance of its truth or falsity, and/or acted in reckless disregard of its truth or falsity. (*Id.*, § 12650, subd. (b)(2); see also *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494–495.) The false statement or claim must also be material, which depends on " ' "whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action." ' " (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 802.)

## D. *Relevant Contract Duties*

The elements for breach of contract are the existence of the contract, performance or excuse for nonperformance, breach, and damages. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820–821.) " 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683.) " ' "Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." ' " (*Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1324.)

## II. The Anti-SLAPP Motion

Gradetech contends the trial court misconstrued the attorney demand letters as merely prerequisites to filing a claim for payment with the City

because they were in fact bona fide first steps in initiating its lawsuit against the City, protected by the anti-SLAPP statute. Gradetech next insists that had the trial court reached the second step of the anti-SLAPP analysis, it would have found the City's False Claim Act claims arising from the attorney demand letters to lack "minimal merit." Gradetech repeats these arguments with respect to the breach of contract causes of action, there citing a different letter it sent the City prior to sending the attorney demand letters. Finally, Gradetech contends attorneys' fees were erroneously denied because its anti-SLAPP motion in fact accomplished a "practical benefit" in its litigation against the City.

The central dispute between the parties is what the City's cross-complaint's causes of action "arise from." This debate can be clarified and resolved through review of *Kajima*, as well as two subsequent California Supreme Court decisions. We therefore review these decisions before proceeding to analyze whether the trial court's ruling was correct.

## A. *"Arising From"*

In *Kajima*, a government contractor (Kajima) sued the City of Los Angeles for breach of contract, alleging it had not been paid for work overages it incurred on a government works project. (*Kajima, supra*, 95 Cal.App.4th at pp. 924–925.) The city cross-claimed, alleging breach of contract and breach of the implied covenant of good faith and fair dealing in connection with Kajima's bidding and work on the project. (*Id*. at p. 925.) The city later amended its cross-complaint to add 19 additional causes of action against Kajima and its two parent companies. (*Ibid*.) Kajima responded by filing a special motion to strike the entire cross-complaint under the anti-SLAPP statute, contending it was filed in retaliation for Kajima's exercise of its First Amendment right to petition for redress of grievances, i.e., for having filed

14

the complaint against the city.  (*Kajima*, at p. 925.)  The trial court denied the anti-SLAPP motion as to all causes of action except one:  a claim that the filing of the complaint itself was a violation of the False Claims Act.  (*Kajima*, at pp. 925–926.)

A panel of the Second District Court of Appeal affirmed, concluding the trial court did not err in denying the motion as to the other causes of action, which targeted Kajima's allegedly fraudulent conduct as to its bidding, billing, and work processes.  (*Kajima, supra*, 95 Cal.App.4th at pp. 929–930.)  The appellate court noted, "[i]t is only the 12th cause of action struck by the trial court that mentions Kajima's specific act in filing the underlying complaint in this action."  (*Id*. at p. 930.)  Because the City did not allege any causes of action based upon Kajima's filing of its lawsuit against the City—except for the False Claims Act violation—the fact that its cross-complaint may have been filed in retaliation for Kajima's complaint was irrelevant to the special motion to strike.  (*Kajima*, at p. 929.)  "Kajima wrongly focuses on the City's filing of the amended cross-complaint as a supposed act of retaliation without demonstrating, as it must under the anti-SLAPP statute, that the amended cross-complaint 'alleges acts in furtherance of [Kajima's] right of petition or free speech . . . .' "  (*Ibid*.)  The appellate court explained it is not sufficient to show that the challenged cross-complaint implicates or involves the same transaction or subject matter as the complaint.  (*Id*. at p. 933.)  Rather, pursuant to the plain language of the anti-SLAPP statute itself, the challenged complaint must have *arisen out of the litigation process itself*.  (*Kajima*, at p. 933.)  Put differently:  "We publish this opinion . . . to emphasize that a cross-complaint or independent lawsuit filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation

15

tactic. No lawsuit is properly subject to a special motion to strike under [Code of Civil Procedure] section 425.16 unless its allegations *arise from acts in furtherance of the right of petition or free speech*." (*Kajima*, at p. 924, italics added.)

Shortly after *Kajima* was decided, our Supreme Court published a pair of cases in which it examined in additional detail the "arising from" requirement. We now turn to those cases. In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 (*City of Cotati*), the city and some of the city's property owners had a dispute concerning whether a rent-control ordinance was constitutional. (*Id.* at p. 72.) The owners sued the city in federal court, seeking declaratory relief on the question. (*Id.* at pp. 72–73.) Later, the city sued the owners in state court, also seeking declaratory relief on the question but in what the city perceived to be a more favorable forum. (*Ibid.*) The owners brought an anti-SLAPP motion against the city in the state court action, and the trial court granted the motion. (*Id.* at pp. 72–73.) After the appellate court reversed, the Supreme Court granted review and concluded that the city's state court action did not qualify as a SLAPP because it did not satisfy the "arising from" requirement. (*Id.* at p. 79.) Rather, the city's lawsuit simply sought declaratory relief concerning *the same underlying controversy*—the constitutionality of the city's ordinance. (*Id.* at p. 80.) The Supreme Court noted that the city's complaint repeatedly referred to the "underlying subject matter" of the prior federal action, i.e., the validity of the ordinance, but contained "no reference to the action itself." (*Id.* at p. 77.) It cautioned that "[t]o construe 'arising from' in [Code of Civil Procedure] section 425.16, subdivision (b)(1) as meaning 'in response to,' as [the anti-SLAPP movants] have urged, would in effect render all cross-actions potential SLAPP's. We presume the Legislature did not intend such an

16

absurd result." (*Ibid.*) The court continued: "California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought *after* the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.' " (*Ibid.*, italics added.)

Next, in *Navellier v. Sletten* (2002) 29 Cal.4th 82 (*Navellier*), disputes arose regarding the management of an investment fund. (*Id.* at p. 85.) The original organizers of the fund sued an independent trustee of the fund in federal court. (*Ibid.*) A settlement agreement was reached with regard to one of the claims, and the independent trustee signed a release of his claims in connection with the execution of the settlement agreement. (*Id.* at p. 86.) The original organizers filed an amended complaint reflecting the partial settlement of their claims, and the independent trustee responded by filing counterclaims against the original organizers. (*Ibid.*) Relying on the release, the original organizers successfully moved for summary judgment on several of the counterclaims. (*Id.* at pp. 86–87.) The original organizers subsequently sued the independent trustee in state court for fraud ("in misrepresenting his intention to be bound by the Release") and breach of contract ("by filing counterclaims in the federal action"). (*Id.* at p. 87.) Relying on the plain language of Code of Civil Procedure section 425.16, our Supreme Court held that the state court action "arose from" protected activity. (*Navellier,* at pp. 90–91.) In so holding, the court explained that the "arising from" inquiry is not merely a function of determining whether "a cause of action arguably may have been 'triggered' by protected activity . . . ." (*Id.* at p. 89.) Instead, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Ibid.*)

**B. *The Breach of Contract Causes of Action Do Not Arise from Protected Activity***

The cross-complaint's 12th through 14th causes of action allege breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the implied duty to perform with reasonable care. The trial court denied the anti-SLAPP motion as to these causes of action at the first step of the anti-SLAPP analysis.

Gradetech challenges the trial court's ruling as to the breach of contract causes of action by highlighting it submitted "a written Notice of Potential Claim on September 1, 2016, just when the consultant commenced his field fit and design changes." The purpose of this notice, Gradetech explains, was to notify the City it had performed "additional work beyond Contract requirements for additional earthwork and grading operations to change jump dirt grades that were already to grades shown on the plans in the Contract Documents." Gradetech concludes that this notice was an act of protected speech which triggered the retaliatory SLAPP cross-complaint.

Applying *Kajima*, *City of Cotati*, and *Navellier* to the facts of this case readily yields the result that the trial court correctly ruled on the anti-SLAPP motion with respect to the breach of contract causes of action.

With respect to its contract claims, the cross-complaint alleged that Gradetech refused to construct the bike park features in the precise sequence required by the City's bike park designer; refused to follow the City's design requests thereby causing multiple delays; failed to ensure the Project had a competent superintendent at the site in violation of the Contract's terms; failed to maintain records to keep an inventory of soil on the site and how much was used for each bike park feature as required by the Contract; either untimely or never submitted its contractual claims or their supporting

18

information; and performed unapproved extra work in violation of the Contract and sought payment for it.

As discussed, *ante*, our Supreme Court in *Navellier* has taught that to determine what activity gave rise to a cross-complaint subject to an anti-SLAPP motion, a court does not look merely to whether "a cause of action arguably may have been 'triggered' by protected activity," but instead, a court examines what the "cause of action is *based on*." (*Navellier, supra*, 29 Cal.4th at p. 89, italics added.) Otherwise, finding protected speech whenever a communication "triggers" a counter-claim risks "render[ing] all cross-actions potential SLAPP's," a result our Supreme Court held in *City of Cotati* would be "absurd." (*City of Cotati, supra*, 29 Cal.4th at p. 77.) The breach of contract causes of action are explicitly based upon Gradetech's allegedly deficient *conduct* that preceded and gave rise to its liability under the Contract. Indeed, the breach of contract causes of action nowhere even mention the "Notice of Potential Claim on September 1, 2016" that Gradetech emphasizes comprise the protected activity which invited a SLAPP by the City.

Because allegedly failing to perform under a government works contract is not a form of protected speech under the anti-SLAPP statute, the trial court correctly denied Gradetech's anti-SLAPP causes of action as to the breach of contract causes of action.

## C. *The Attorney Demand Letter Causes of Action Arise from Protected Activity*

The cross-complaint's first through sixth causes of action allege that Gradetech violated the False Claims Act when it sought compensation for its deficient performance under the Contract by means of the attorney demand letters. The trial court denied Gradetech's anti-SLAPP motion as to these cross-causes of action at step one of the anti-SLAPP analysis, finding they

19

were not protected speech but merely the first step in the government claims submission process.

Gradetech contends this was error by arguing that the attorney demand letters themselves are the acts the cross-complaint's attorney demand letter causes of action are based upon; that the relevant causes of action explicitly target those letters; and that they were plainly sent in anticipation of litigation. It argues that regardless of whether additional contractual steps remained in order for them to sue under the Contract, the Standard Specifications, and the Government Code, a lawsuit was inevitable; and that the content of the attorney demand letters "went beyond the 'submission of contractual claims for payment in the regular course of business.' " Thus, Gradetech concludes, the City's attorney demand letter causes of action were a SLAPP.

The City demurs, insisting that multiple steps remained pursuant to the Contract and the City's Standard Specifications before Gradetech could commence suit, and because multiple steps remained, under *Bailey*, *supra*, 197 Cal.App.4th at page 790, "[Gradetech did not] have a good faith belief in a legally viable claim." Specifically, the City writes, "[b]ecause Gradetech had not yet submitted the claims information required by Standard Specifications sections 9-1.04 and 9-1.07B concerning any of the five items described in Gradetech's November letter, no legally viable claim existed when the letters were written."

*Bailey* is inapposite here, and the City takes the phrase "legally viable claim" out of context. In *Bailey*, a panel of the Second District Court of Appeal examined whether pre-litigation cease and desist letters from the party's attorney were protected petitioning activity under the anti-SLAPP statute. (*Bailey*, *supra*, 197 Cal.App.4th at p. 792.) The appellate court

20

proceeded to hold that because the cease and desist letters "related to proposed litigation *barred by the doctrine of res judicata,* such statements did not relate to litigation 'contemplated in good faith and under serious consideration,' " reasoning that "no reasonable plaintiff could have believed in good faith that the contemplated litigation was legally viable." (*Id.* at pp. 793, 795, italics added.) The appellate court emphasized that its holding turned on whether the plaintiff's claim was being brought in good faith: "The question before us is whether Brewer's statements of intent to litigate claims previously resolved against him could have been contemplated in good faith." (*Id.* at p. 794.) But crucially, the appellate court explicitly limited its holding: "In reaching this conclusion, we note that our ruling is a narrow one. It applies only in cases where the proponent of the contemplated litigation has been barred from relitigating the contemplated claims under the doctrine of res judicata." (*Id.* at p. 795.) The City makes no res judicata argument here, and thus the narrow *Bailey* exception does not apply.

The City also argues that reversing the trial court's ruling as to the attorney demand letter causes of action leads to unacceptable results. If Gradetech's interpretation of the anti-SLAPP statute were correct, the City argues, a government contractor could immunize itself from False Claims Act liability for fraudulent claims submissions simply by sending attorney drafted letters prior to being sued by the governmental unit with whom it contracted. To see why, this argument continues, assume that Gradetech in fact failed to perform under the Contract. By sending the attorney demand letters, it would insulate itself from False Claims Act liability because any counterclaim predicated thereupon would be arising from its attorney drafted letters, and not from its deficient conduct. It is unclear, the City's argument

21

concludes, how the City could ever defeat an anti-SLAPP motion if Gradetech's argument is taken to its logical conclusion.

This argument fails to appreciate that we are reviewing only the first *of two* showings that must be made for the City's attorney demand letter causes of action to be stricken as SLAPPs. True, we conclude that the attorney demand letters are so closely connected to Gradetech's lawsuit against the City that they should not be construed to fall outside judicial petitioning activity. (See Code Civ. Proc., § 425.16, subd. (e)(2).) But that does not mean the City's attorney demand letter causes of action are thereby stricken as a SLAPP. Instead, the anti-SLAPP analysis merely moves to the second step whereupon the City, now carrying the burden of proof, must demonstrate that these causes of action possess "minimal merit." (*Navellier*, *supra*, 29 Cal.4th at p. 93 ["[a]s our emerging anti-SLAPP jurisprudence makes plain, the statute poses no obstacle to suits that possess minimal merit"].) Indeed, the *Navellier* court appeared to rebut just such *reductio ad absurdum* argument here advanced by the City: "[C]ontrary to the protestations of plaintiffs' counsel at oral argument, the anti-SLAPP statute neither constitutes—nor enables courts to effect—any kind of 'immunity' for breach of a release or of other types of contracts affecting speech. When a ' "complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited" ' [citation], it is not subject to being stricken as a SLAPP. In so providing, we have observed, the Legislature 'weighed an appropriate concern for the viability of meritorious claims against the concern "to encourage participation in matters of public significance" ' [citation]." (*Navellier*, at pp. 93–94.)

Gradetech correctly emphasizes the attorney demand letters conspicuously indicated they were being sent in advance of potential litigation; they were each sent by an attorney and on law firm letterhead; each letter began with the statement "[t]his law firm represents [Gradetech] in connection with the City's Lake Cunningham Bike Park"; and just two months after the November letter, Gradetech served its Government Code claim (the necessary next step for filing a lawsuit). Gradetech duly filed suit less than two months after that. As to the City's insistence that the Contract and the Standard Specifications required multiple conditions precedent prior to Gradetech being compensated under the Contract, "[t]he merits of [a substantive claim] should play no part in the first step of the anti-SLAPP analysis. [Citation.] The first step only determines whether [Code of Civil Procedure] section 425.16's *procedural* protection applies[.]" (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371.)

The Legislature expressly commanded that the scope of the anti-SLAPP statute "shall be construed broadly." (Code Civ. Proc., § 425.16, subd. (a).) That mandate, together with the content, presentation, and timing of the attorney demand letters, leads us to find they are sufficiently connected to Gradetech's lawsuit itself that they constitute protected speech under the anti-SLAPP statute. The trial court therefore erroneously denied Gradetech's anti-SLAPP motion as to the attorney demand letter causes of action at the first step of the anti-SLAPP analysis.[10]

---

[10] We observed, *ante*, that the trial court relied upon *Wollersheim, supra,* 42 Cal.App.4th at page 651 as an independent basis for ruling that the attorney demand letter causes of action were not SLAPPs because it had earlier ruled that the City's cross-complaint was "compulsory." The City makes this argument on appeal, instead citing *Kajima, supra,* 95 Cal.App.4th at page 934, wherein *Kajima* invokes *Wollersheim,* at page 651 for the same proposition, i.e., that " '[a] compulsory cross-complaint on a "related cause of

The trial court did not reach the second step of the anti-SLAPP analysis. Although we may do so in the first instance (see, e.g., *Hecimovich v. Encinal Sch. Parent Teacher Org.* (2012) 203 Cal.App.4th 450, 468), we elect not to do so here and express no view of whether the City's claims possess the requisite minimal merit to proceed. We likewise vacate the trial court's determination denying attorneys' fees, leaving that issue for determination after the trial court decides the anti-SLAPP second step.

Finally, we return to the issue of the discrepancy between the City's representation to the trial court—that it would dismiss the five False Claims Act causes of action arising from Gradetech's Government Code claims with prejudice—and its conduct in filing a dismissal without prejudice, months after its contrary representation to the trial court. In its reply brief, Gradetech requested for the first time that this court make adverse findings against the City, and award Gradetech attorneys' fees, because of what Gradetech characterizes as the City's duplicitous conduct in apparently reserving the ability to refile these claims. At oral argument, Gradetech clarified that it is merely requesting that this court take the City's conduct into account, including with respect to whether Gradetech should recover its

---

action" against the plaintiff (Code Civ. Proc., § 426.30, subd. (a)) would rarely, if ever, qualify as a SLAPP suit arising from petition activity.' " We recognize our determination with respect to the attorney demand letter causes of action places this case among the "rarely, if ever" camp the *Wollersheim* court stated would infrequently meet the first prong of the anti-SLAPP statute. But *Wollersheim* articulated no rule barring compulsory cross-complaints from qualifying as SLAPPs. To the extent it did, it would be incorrect because "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier*, *supra*, 29 Cal.4th at p. 92.)

attorneys' fees for litigating its anti-SLAPP motion. The City at argument attributed the without-prejudice filing to a paperwork error. We believe that these arguments are best directed to the trial court in the first instance, which may consider them as part of the totality of circumstances in resolving the attorneys' fees determination.

## DISPOSITION

The trial court's December 15, 2020 order is affirmed with respect to causes of action Nos. 12, 13, and 14 of the City's cross-complaint. The trial court's December 15, 2020 order is reversed with respect to the first through sixth causes of action in the City's cross-complaint. The trial court's ruling on attorneys' fees is vacated. The matter is remanded for the trial court to conduct further proceedings consistent with this opinion.

Each party shall bear its own costs on appeal.

_____

Van Aken, J.*

We concur:

_____

Richman, Acting P.J.

_____

Miller, J.

*Gradetech, Inc. v. City of San Jose* (A165825)

\* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.